```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION


UNITED STATES OF AMERICA,         )
                                  )
         Plaintiff,               )
                                  )
    v.                            )    No. 4:08 CR 697 ERW
                                  )                   DDN
 TODD SHEPARD and                 )
EVERETTE SIMMONS,                 )
                                  )
         Defendants.              )
```

### ORDER AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

This action is before the court upon the pretrial motions of the parties which were referred to the undersigned United States Magistrate Judge under 28 U.S.C. § 636(b).

Before the court are the motions of defendant Todd Shepard to sever the defendants for separate trials (Doc. 61), and to suppress evidence (Doc. 19 oral motion, and Doc. 64 documentary motion); and of the United States for a determination of the admissibility or not of any arguably suppressible evidence (Doc. 21 oral motion). An evidentiary hearing was held on June 24, 2009.

### I. MOTION TO SEVER

Defendant Todd Shepard has moved for an order granting him a separate trial from his co-defendant Everette Simmons (Doc. 61). Simmons and Shepard are jointly charged in a one-count indictment with conspiracy to distribute and possess with the intent to distribute more than five kilograms of cocaine and more than fifty grams of cocaine base. (Doc. 13.)

In support of his motion, Shepard makes several arguments: (1) co-defendant Simmons may have critical evidence to offer in favor of Shepard but not do so during a joint trial, invoking his privilege against self-incrimination; (2) Simmons may have made interview statements which the government intends to use against Simmons, but, because such statements may also incriminate Shepard, Shepard would desire to but not be able to cross-examine Simmons about the statements; and (3) Simmons may testify in his

own defense, thus forcing Shepard also to testify or suffer an adverse inference by the jury for exercising his right to remain silent.

"When a defendant moves for a severance, a district court must first determine whether joinder is proper under Federal Rule of Criminal Procedure 8." United States v. Ruiz, 412 F.3d 871, 886 (8th Cir. 2005). Even if joinder is proper, the trial court may, in its discretion, sever defendants under Rule 14. Id. Still, the federal rules of criminal procedure are to be liberally construed in favor of joinder. Id.

In this case, joinder of the defendants is proper under Rule 8(b). Simmons and Shepard are each jointly charged in the only count in the indictment. The facts and charges alleged against Shepard are therefore factually interrelated with those alleged against Simmons. See United States v. Darden, 70 F.3d 1507, 1526-27 (8th Cir. 1995).

Although joinder was proper under Rule 8, the court considers the motion to sever under Rule 14, to determine whether the joinder prejudices the defendant. When deciding a motion for severance, a court must weigh the inconvenience and expense of separate trials against the prejudice resulting from a joint trial of co-defendants. United States v. Pherigo, 327 F.3d 690, 693 (8th Cir. 2003). The prejudice against a defendant must be "severe or compelling" for it to warrant a severance. Id. That is, severance is only required when the evidence is such that a jury could not be expected to compartmentalize it as it relates to the separate defendants. Id. Further, a joint trial gives the jury the best perspective on all of the evidence, increasing the likelihood of a correct outcome. Id. In deciding the jury's ability to compartmentalize the evidence, the court must consider (1) the complexity of the case, (2) whether one or more of the defendants was acquitted, and (3) the availability of adequate instructions. Id. Thus, the court might wait until the trial to determine whether joinder in fact created sufficient prejudice to warrant severance.

A district court may, in its discretion, grant a motion to sever when evidence which is admissible only against one defendant may be damaging to a co-defendant, or when the strength of the government's case against one defendant differs substantially from that against the other defendant. United States v. Lee, 374 F.3d 637, 646 (8th Cir. 2004). However, "[w]hen

defendants are charged with a conspiracy, there is a presumption that they will be tried together." United States v. Stockton, 968 F.2d 715, 718 (8th Cir. 1992); see also United States v. Ruiz, 446 F.3d 762, 772 (8th Cir. 2006).

In this case, the motion to sever should be denied at this time. Defendant Shepard's arguments are speculative. There is no substantial showing or indication that Simmons made incriminating statements that also incriminate Shepard which the government would not redact to avoid undue prejudice. Further, there is no substantial showing that Simmons would testify in either his own or in Shepard's behalf if they were severed. In its response, the government adopts its response to the motion for severance that co-defendant Simmons filed. (Doc. 73 at 6.) In that document the government stated that there were "no statements made by the co-defendant [(Shepard)] which inculpate [] Simmons. . . ." (Doc. 51 at 4.) The undersigned construes the adoption of the earlier memorandum to imply that the government does not intend to offer any statement by co-defendant Simmons which incriminates Shepard. In addition, the government states that it does not intend to introduce at trial any evidence related to the murder of the University City police officer. (Id.) And even if Simmons made statements that inculpated Shepard, the court could protect Shepard's rights through a cautionary instruction, or by redacting any mention of Shepard. See United States v. Canania, No. S3-4:06 CR 33 ERW (DDN), 2006 WL 2632330, at *1 (E.D. Mo. Sept. 13, 2006). If the context of a joint trial presents actual and substantial prejudice to either defendant, the affected defendant may move again for severance.

The motion to sever should be denied without prejudice.

## II.  MOTION TO SUPPRESS EVIDENCE

From the evidence adduced at the hearing on the motion of defendant to suppress evidence, the undersigned makes the following findings of fact and conclusions of law:

**FACTS**

1. On November 2, 2008, United States Drug Enforcement Administration Special Agent John McGuire received a telephone call from the University City, Missouri, Police Department. He was told that on October 31, 2008, University City Police Sergeant Michael King was found shot in his police cruiser in University City. Agent McGuire responded to the call and was told that the police investigation into the killing of Sgt. King turned up information from a Melody Newsom that included a statement that she had flushed three grams of crack cocaine down a toilet.

2. Shortly before 5:30 p.m. on November 4, 2008, Agent McGuire applied for and received a search warrant from United States Magistrate Judge Terry I. Adelman for 6015 Hancock, in Berkeley, Missouri, to search for, among other things, evidence of trafficking in cocaine and cocaine base, documents of Todd Shepard, firearms, and ammunition. In support of his application, Agent McGuire submitted his sworn, written affidavit. In his affidavit, he described his employment with the DEA as a special agent and his extensive training and experience investigating drug trafficking and related firearms offenses. The affidavit stated that Sgt. King had been found shot approximately four times in his police cruiser parked near 605 Leland in University City. Sgt. King was transported to Barnes Medical Center where he was pronounced dead. Upon the search of Sgt. King's cruiser, a stolen Smith and Wesson .38 caliber, five shot revolver, bearing the serial number ANP8441, was discovered. The weapon contained five spent .38 caliber shell casings, consistent with the fatal injuries inflicted on Sgt. King. Gov. Ex. A at ¶ 3.

3. The affidavit stated further that University City Police Officer Seaman reported that, when she was in the area of Loop North and Delmar Blvd. in University City, she heard numerous gunshots, then a women yell, "That's him, that's him." The affidavit stated that Officer Seaman reported that the woman pointed to a late 1980s or early 1990s model Oldsmobile, gold or tan in color, bearing the Missouri license plate number 2AB 28J. The vehicle, driven by a black male, light complexion, with braided hair, fled west on Delmar Blvd. The affidavit stated that a computer check determined that the license number was

issued to a 1993 Oldsmobile Cutlass four door automobile and was registered to Melody Newsom at 4215 Swan in St. Louis. Id. at ¶¶ 4-5.

4.   The affidavit also stated that on November 1, 2008, at approximately 3:48 a.m., Newsom was located at her residence of 6015 Hancock, in Berkeley, Missouri[1]. Newsom told the police that she had resided there with her boyfriend Todd Shepard. The affidavit stated that Newsom consented to a search of the residence and that detectives located approximately $7,000 in United States currency in Newsom's purse. The affidavit stated that in an interview with University City detectives Newsom said that she gave her vehicle to Shepard, whom she had been dating for fifteen years; that she had braided his hair earlier in the day; and that he left her residence at 9:00 p.m. in her vehicle, telling her he was going to drive to Williston. The affidavit stated that Newsom told the police that Shepard frequently spoke of killing a police officer because of unfair treatment blacks and lower class people received from the government. The affidavit stated that before the officer's arrival she had flushed down the toilet about three ounces of crack cocaine that belonged to Shepard. Id. at ¶ 6. The affidavit stated that the presence of this quantity of cocaine base indicated an intent to distribute. Id. at ¶ 9.

5.   The affidavit further stated that Newsom told the police that she had not talked with Shepard since approximately "2200 hour[s] on October 31, 2008." Newsom gave the police her own cellular telephone number and the one used by Shepard. The affidavit described further investigation that led to the location of Shepard's cell phone, abandoned at 7736 Delmar in University City, on the route traveled by the vehicle driven by the person who shot Sgt. King. This investigation also indicated that frequent calls were made between Newsom's and Shepard's cell phones and that the last call Shepard made on the phone was at 10:21:59 p.m., very shortly after Sgt. King's murder. The affidavit also stated that Newsom said she had received a garbled

---

[1]Special Agent McGuire testified at the suppression hearing that this location was discovered from a cell phone subscriber record. However, on cross-examination, McGuire testified he did not recall how the University City Police Department tracked Newsom to 6015 Hancock.

telephone call from Shepard at this time. The affidavit stated that the police had determined that the firearm seized from Sgt. King's patrol car had been manufactured outside the state of Missouri. Id. at ¶ 8.

6. The affidavit also provided expert opinions of the affiant regarding the likely presence, at a place to be searched that is involved in drug trafficking, of currency and assets derived from trafficking, records of trafficking, the likely storage of contraband and sales proceeds in the residence, the facilities used by traffickers to communicate among themselves and others, items indicating the shipment of drug contraband, the likelihood that identification of other persons involved in the trafficking would be found in the place to be searched, the use of packaging and other paraphernalia of trafficking in drugs, and the likelihood that firearms and ammunition would be found in the place to be searched. Id. at ¶ 12. Attached to the affidavit and to the search warrant was a List of eleven categories of items to be seized, including the items indicated by the expert opinions set out in paragraph 12 of the affidavit.

7. At 5:30 p.m. on November 4, 2008, Judge Adelman issued a search warrant for 6015 Hancock. Gov. Ex. B. The warrant was executed later on November 4 and items were seized, including: four cellular telephones, two computer terminals and cords, a kilogram wrapper, a bag of suspected "cut",[2] two camera memory cards, a credit card in the name of Paul Edwards,[3] a money bag, a box for a Pontiac/AT&T cellular phone, two hotel keys, three Visa debit cards, a disposable camera, fourteen various books, miscellaneous CD's, rubber bands, one box of 35 rounds of .38 special 130 grain ammunition, and one box of 25 rounds of .32 caliber Smith and Wesson long ammunition. Gov. Ex. C.

---

[2]"Cut" was defined during the hearing as powder material used to thin out or dilute cocaine powder.

[3]Special Agent McGuire testified at the suppression hearing that he did not remember whether the name Paul Edwards was identified in the investigation prior to execution of the search warrant. However, McGuire also testified that the credit card was seized because the name Paul Edwards was known prior to the search warrants execution.

**DISCUSSION**

In support of his motion to suppress evidence, defendant Shepard argues that the search warrant was unlawfully issued without probable cause, and that items were seized beyond the scope of the warrant.[4] In response to the motion, the government argues the warrant to search the residence was properly issued and executed.

The issue before this court when reviewing the validity of the issuance of a search warrant is whether the supporting materials gave the issuing judge a substantial basis for concluding that probable cause existed for the issuance of the warrant. United States v. Stevens, 439 F.3d 983, 987 (8th Cir. 2006) (citing Illinois v. Gates, 462 U.S. 213, 238-39 (1983)). Probable cause means a "fair probability that . . . evidence of a crime will be found in a particular place," given the circumstances set forth in the affidavit. United States v. Horn, 187 F.3d 781, 785 (8th Cir. 1999) (quoting Illinois v. Gates, 462 U.S. at 238).

In this case, the government applied for a warrant to search for and to seize cocaine and cocaine base, evidence of cocaine trafficking, and firearms and ammunition. The affidavit, while recounting some of the investigation of Sgt. King's killing, also described the involvement of 6015 Hancock in illegal dealing in cocaine and cocaine base. The investigation of the killing led to Ms. Newsom, who resided at 6015 Newsom. She voluntarily consented to a search of her residence, and $7,000 in currency was seized from her purse. Newsom's flushing down the toilet at 6015 Hancock three ounces of crack cocaine, an amount that the affidavit indicated an intent to distribute, clearly indicated that the residence was involved with cocaine base trafficking. The undersigned concludes that the affidavit provided Judge Adelman a substantial basis for finding probable cause and, thus, for issuing the search warrant. All of the items seized were directly indicated by

---

[4]Defendant also moved to suppress the items seized on November 6, 2008, from a vehicle in which he was arrested. During the hearing, counsel for the United States stated that none of the items seized from the vehicle on November 6, 2008, would be used at trial. Therefore, these items were not the subject of the suppression hearing.

the List attached to the search warrant and to the affidavit. Defendant argues that the credit card in the name of Paul Williams was not within the scope of the search warrant. The undersigned disagrees. While the hearing evidence on this issue includes testimony that the police were only aware of such a person, the search warrant list of items to be seized included the following category of wealth and assets:

> 8. Books, records, receipts, pay stubs, employment records, bank statements and records, money drafts, letters of credit, money order and cashier's checks receipts, passbooks, bank checks and other items evidencing the obtaining, secreting, transfer, concealment and/or expenditure of money.

Gov. Ex. A, Attach. A, ¶ 8. Clearly, the Paul Williams credit card was an item of wealth and was an asset, whether in the name of defendant or in another's name. It was within the lawful scope of the finding of probable cause and the search warrant.

For these reasons,

**IT IS HEREBY RECOMMENDED** that the motion of defendant Todd Shepard for an order granting him a separate trial from his co-defendant (Doc. 61) be denied without prejudice.

**IT IS FURTHER RECOMMENDED** that the motion of defendant Todd Shepard to suppress evidence (Docs. 19, 64) be denied.

**IT IS HEREBY ORDERED** that the motion of the United States for a determination by the court of the admissibility or not of any arguably suppressible evidence is denied as mooted by the determinations made in this Order and Recommendation.

The parties are advised they have until 12:00 noon on July 8, 2009 to file documentary objections to this Report and Recommendation. The failure to file timely, documentary objections may waive the right to appeal issues of fact.

          /S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on July 2, 2009.